# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------x
RAZIE ALTHOLZ,                                    Index #:
                                                  Date Filed:

                         Plaintiff,    Plaintiff designates Kings
                                                  County as the place of trial.
    -against-

                                                  Basis of Venue: Plaintiff's
THE UNITED SYNAGOGUE OF CONSERVATIVE              place of residence
JUDAISM,

                       Defendants.   **SUMMONS**

                                                  Plaintiff resides at 399 Fourth
                                                  Street, Brooklyn, NY 11125.
-----------------------------------------------------------------------x

**TO THE ABOVE-NAMED DEFENDANTS:**

      You are hereby summoned to answer the complaint in this action, and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a notice of Appearance, on counsel for the plaintiff, within 20 days after the service of this Summons is complete, exclusive of the day of service (or within 30 days after service of this Summons is complete, if this Summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       July 9, 2021

                                                  _____
                                                  CARLA P. BAUTISTA
                                                  **ALAN J. BENNETT, PLLC**
                                                  Attorneys for Plaintiff
                                                  RAZIE ALTHOLZ,
                                                  369 Lexington Avenue
                                                  Suite 213
                                                  New York, New York 10017
                                                  (212) 696-2116

**DEFENDANTS' ADDRESSES:**
THE UNITED SYNAGOGUE OF
CONSERVATIVE JUDAISM:                3080 Broadway
                                                  Suite B208
                                                  New York, New York 10027

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------------x
RAZIE ALTHOLZ,

                Plaintiff,

-against-

THE UNITED SYNAGOGUE OF CONSERVATIVE
JUDAISM,

                Defendant.
-----------------------------------------------------------------------x

Index #:
Date of Filing:

**VERIFIED COMPLAINT**

Plaintiff RAZIE ALTHOLZ (hereinafter "Altholz") by her counsel, ALAN J. BENNETT, PLLC, as and for her Verified Complaint against the defendant THE UNITED SYNAGOGUE OF CONSERVATIVE JUDAISM (hereinafter "USCJ" or "Defendant"), respectfully alleges, upon information and belief, as follows:

**FACTS COMMON TO ALL CAUSES OF ACTION**

1. That at all times hereinafter alleged, the plaintiff resided in the County of Kings, in the State of New York.

2. That at all times hereinafter alleged, USCJ was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York, maintains its principal place of business and transacts business within the County of New York, and as such, is subject to the jurisdiction of this Honorable Court.

3. That at all times hereinafter alleged, USCJ was and still is a domestic not-for-profit corporation, duly organized and existing under and by virtue of the laws of the State of New York, maintains its principal place of business and transacts business within the County of New York, and as such, is subject to the jurisdiction of this Honorable Court.

4. That at all times hereinafter alleged, USCJ was and still is a foreign corporation, duly registered and authorized to transact business within the State of New York, maintained and maintains its principal place of business, transacted and transacts business, within the County of New York, and as such, is subject to the jurisdiction of this Honorable Court.

5. That at all times hereinafter alleged, Altholz was an employee of USCJ, as that term is defined by all relevant federal, City and State of New York antidiscrimination laws.

6. That at all times hereinafter alleged, USCJ engaged in an industry affecting commerce, and employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the subject or preceding calendar year, and as such constituted and constitutes an "employer" within the meaning of the federal anti-discrimination laws, including but not limited to 42 USC 2000e, et. seq.

7. That at all times hereinafter alleged, USCJ not only engaged in, and/or represented to Altholz to have engaged in, and/or is legally and/or equitably estopped from denying to have engaged in, commerce or in an industry or activity affecting commerce, but USCJ employed, and/or represented to Altholz to have employed, and/or is legally and/or equitably estopped from denying to have employed, fifty (50) or more employees for each working day during each 20 or more calendar workweeks in the subject or preceding calendar year, and as such constituted and constitutes an "employer" within the meaning of the Family and Medical Leave Act of 1993 (hereinafter the "FMLA").

8. That at all times hereinafter alleged, Altholz worked for USCJ for twelve (12) months, worked at least 1,250 hours of service for USCJ during the twelve (12) month period immediately preceding the taking of maternity leave, and worked at a location where USCJ had at least fifty (50) employees within seventy-five (75) miles, and as such, Altholz constituted and constitutes an "employee" within the meaning of the FMLA.

9. That at all times hereinafter alleged, USCJ employed more than four (4) employees, and as such constituted and constitutes an "employer" within the meaning of the City and State of New York anti-discrimination laws.

10. That at all times hereinafter alleged, Altholz was a pregnant female.

11. That at all times hereinafter alleged, Altholz was an "employee", as that term is defined by the relevant aforesaid City and State of New York antidiscrimination laws.

12. That Altholz was employed continuously by USCJ from on or about June 24, 2019-October 19, 2020, as a full-time lead graphic designer in USJC's MarCom Department with the following terms and conditions of employment: an annual salary of $48,000.00, payable biweekly; a sign on bonus of $5,000.00, prorated over twenty-four (24) pay periods, for the

first (1st) year; sixteen (16) vacation days per year; and fourteen (14) sick days per year ("Altholz' Position").

13. That Altholz duties and responsibilities in Altholz' Position initially included, but were not limited to, the development and creation of original work (including brochures, posters, postcards, flyers, social media graphics, newsletters, infographics, ads, signage and other print and digital materials); and maintenance of the USCJ website (hereinafter "Altholz Graphic Design Responsibilities").

14. That immediately after the commencement of Altholz' employment at USCJ, its MarCom Department became severely understaffed, with the only other employee thereof resigning.

15. That as a result thereof, USCJ, its agents, servants and/or employees, including Altholz supervisors at USCJ (Julie Livingston ["Livingston"] and Candace Gaswirth ["Gaswirth"- Livingston and Gaswirth collectively referred to as the "Supervisors"]) expanded Altholz' Position to include, in addition to her Graphic Design Responsibilities, administrative and non-design duties and responsibilities, including but not limited to consistent data entry regarding the tracking of all USCJ emails, creating and updating groups and/or contacts in the database, creating and updating events and registration pages in the database, and drafting the subsequent emails; coordinating the lay-out of weekly and bi-weekly USCJ newsletters, and creating copy materials for the USCJ website (hereinafter "Altholz Non-Design Responsibilities").

16. That throughout the balance of her employment with USCJ, until Altholz left for maternity leave, as is alleged herein, Altholz' Position included both Altholz' Graphic Design Responsibilities and Altholz' Non-Design Responsibilities.

17. That throughout the balance of her employment with USCJ, its agents, servants, employees and Supervisors repeatedly admitted, acknowledged, represented and ratified, that Altholz' Position included both Altholz' Graphic Design Responsibilities and Altholz' Non-Design Responsibilities.

18. That at all times during her tenure of employment at USCJ, Altholz' work performance of both Altholz' Graphic Design Responsibilities and Altholz' Non-Design Responsibilities was satisfactory or better, if not recognized and acknowledged as being exemplar, by USCJ, its agents, servants, employers and Supervisors, including but not limited to, the following: Altholz receiving an overall rating of "Exceeds Expectations" on her performance review in January of 2020; Livingston repeatedly praising Altholz throughout the tenure of her employment at USCJ as

having "set a high bar", an "extremely strong art director and graphic designer" "a delight to work with" and "extremely dedicated", while going "above and beyond to ensure that the Marketing department is running smoothly".

19. That on or about December of 2019, Livingston asked Altholz to review the portfolio of Jeanine Davis ("Davis"), a freelance designer who Livingston and Gaswirth had previously worked with, in order to determine if Davis was a good candidate should USCJ's MarCom Department ever need additional assistance.

20. That Altholz participated in the interview process of Davis, speaking with her early January 2020 regarding the types of projects Davis may be working on.

21. That on or about in or about January of 2020, Altholz advised USCJ, including her Supervisors and Leslie Lichter (USCJ's Interim CEO), that she was pregnant, and that she wanted to apply for any and all maternity leave benefits as may be applicable to her, pursuant to the Federal (including maternity benefits pursuant to the FMLA), City and State of New York laws (hereinafter collectively the "Maternity Leave Benefits").

22. That thereafter, USCJ, its agents, servants and employees, provided Altholz with written forms to complete and submit, towards her application for Maternity Leave Benefits (hereinafter the "Maternity Leave Applications").

23. That on or before May of 2020, Altholz submitted to USCJ, its agents, servants and employees, completed the Maternity Leave Applications, including for Maternity Leave Benefits pursuant to the FMLA.

24. That after a review, consideration and evaluation of the Maternity Leave Applications, USJC determined that Altholz was eligible, and approved, all Maternity Leave Applications for Maternity Leave Benefits, including for Altholz to receive Maternity Leave Benefits pursuant to the FMLA, for a twelve (12) week period between June 29, 2020-October 19, 2020 (the "Maternity Leave Period").

25. That throughout her pregnancy term, Altholz not only repeatedly expressed to USCJ, its agents, servants, employees and Supervisors that she intended to return to Altholz' Position upon conclusion of the Maternity Leave Period, but that at no time prior to the commencement of the Maternity Leave Period, was Altholz ever advised by anyone at, or on behalf of, USJC, including from her Supervisors, that either Altholz' future employment, or Altholz' Position, at USCJ, was in jeopardy or danger of being terminated, eliminated or downsized.

26. That accordingly, Altholz thereafter coordinated with UCSJ, its agents, servants, employees and Supervisors, to secure a temporary replacement to fill-in for Altholz' Graphic Design Responsibilities aspects of Altholz' Position, just during Altholz' Maternity Leave Period.

27. That on or about May of 2020, Livingston requested that Altholz and Gaswirth supervise and train Davis to continue working on Altholz' on-going graphic design projects, once Altholz would begin her Maternity Leave Period.

28. That Altholz commenced her Maternity Leave Period on June 29, 2020, giving birth to her daughter on June 29, 2020.

29. That despite all of the foregoing, by notice dated July 13, 2020, USCJ suddenly and for the first time advised that Altholz was being terminated effective October 19, 2020, that alleged business justification being the elimination of Altholz's Position, and that there were no other positions available at USCJ for which Altholz was qualified (hereinafter "Altholz' Notice Of Termination").

30. That a motivating factor for Altholz' termination of employment was based on Altholz being a pregnant female, and/or Altholz' application for, and her receiving of, Maternity Leave Benefits.

31. That USCJ's alleged business justification for Altholz' termination is not legitimate, but rather a pretext to conceal unlawful discrimination based on Altholz being a pregnant female, and/or of Altholz applying for and receiving Maternity Leave Benefits, as Altholz' Position was not eliminated, and there existed other comparable positions at USJC, which were expressly advertised and posted to the public by USCJ as being open and available, for which Altholz was qualified to fill.

32. That upon information and belief, Davis, was given, and remains in, Altholz' Position.

33. That Altholz was never offered a comparable position, despite USCJ concomitantly and thereafter advertising and posting for, and hiring, employees and a freelancer to, numerous comparable positions for which Altholz was duly qualified to fill, including within two (2) weeks of Altholz' Notice Of Termination, USCJ hiring two (2) employees to comparable positions for which Altholz was qualified, one of which being hired on the effective date of Altholz' termination.

34. That to date Altholz has not been able to obtain comparable full-time employment, despite attempts to secure same, which has and continues to take a debilitating toll not only Altholz' finances, but on her health,

physically, emotionally and psychologically (especially with not only having to raise a newborn daughter in addition to her other toddler, without her income), but simultaneously having to seek new employment in a pandemically-challenged economy with fewer available employment opportunities).

35. That on or about February 24, 2021, Altholz filed a complaint regarding the aforesaid with the Equal Employment Opportunity Commission.

36. That the Equal Employment Opportunity Commission issued to Altholz a Right To Sue Letter dated April 23, 2021, to initiate the subject action.

37. That Altholz has complied with all conditions precedent to the timely commencement of the subject action.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF RAZIE ALTHOLZ AGAINST THE DEFENDANT FOR UNLAWFUL DISCRIMINATION, IN VIOLATION OF EXECUTIVE LAW SECTION 296(1)(a)

38. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"37" of this Complaint as though fully and completely set forth at length herein.

39. It is a violation of the New York State Executive Law Section 296, et. al., for employers such as USCJ to discriminate in the terms and conditions of employment because an employee is a member of a statutorily protected class of individuals.

40. That pregnant women such as Altholz are a statutorily-protected class of individuals thereunder.

41. Employees such as Altholz that have the terms and conditions of their employment changed, as well as being terminated from employment, because of their gender and/or pregnancy, are defined by the New York State Executive Law, and by case precedent, as a protected class.

42. The aforesaid conduct, actions and behavior of the Defendant, its agents, servants or employees, were based upon Altholz' membership in any/all of the aforesaid protected classes, in violation of the aforesaid New York State Executive Law.

43. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

44. In addition to suffering significant loss of income, bonuses, perks and benefits, Altholz was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Altholz' human rights.

45. As a proximate result of defendants' conduct, Altholz has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

46. That the aforesaid actions, conduct and behavior of the Defendant, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, gross, wanton, irresponsible and/or intentional, and shocks the conscience of this Honorable Court.

47. Altholz, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the Defendant, of a separate award of punitive damages and attorney's fees, along with costs, interest and disbursements.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF RAZIE ALTHOLZ AGAINST THE DEFENDANT FOR UNLAWFUL DISCRIMINATION, IN VIOLATION OF CHAPTER I, TITLE 8 OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK**

48. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"47" of this Complaint as if fully and completely set forth at length herein.

49. It is a violation of the Administrative Code of the City of New York, Chapter I, Title 8, et. seq., for employers such as USCJ to discriminate in the terms and conditions of employment because an employee is a member of a statutorily protected class of individuals.

50. That pregnant women such as Altholz are a statutorily-protected class of individuals thereunder.

51. Employees such as Altholz that have the terms and conditions of their employment changed, as well as being terminated from employment, because of their gender and/or pregnancy, are defined by the

        Administrative Code of the City of New York, and by case precedent, as a protected class.

52.    The aforesaid conduct, actions and behavior of the Defendant, its agents, servants or employees, were based upon Altholz' membership in any/all of the aforesaid protected classes, in violation of the aforesaid Administrative Code provisions.

53.    That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

54.    In addition to suffering significant loss of income, bonuses, perks and benefits, Altholz was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Altholz' human rights.

55.    As a proximate result of defendants' conduct, Altholz has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

56.    That the aforesaid actions, conduct and behavior of the Defendant, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, gross, wanton, irresponsible and/or intentional, and shocks the conscience of this Honorable Court.

57.    Altholz, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the Defendant, of a separate award of punitive damages and attorney's fees, along with costs, interest and disbursements.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF RAZIE ALTHOLZ AGAINST DEFENDANT FOR UNLAWFUL DISCRIMINATION, IN VIOLATION OF 42 USC 2000e, et. seq.

58.    Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"57" of this Complaint as though fully and completely set forth at length herein.

59. It is a violation of 42 USC 2000e, et. seq., for employers such as USCJ to discriminate in the terms and conditions of employment because an employee is a member of a statutorily protected class of individuals.

60. That pregnant women such as Altholz are a statutorily-protected class of individuals thereunder.

61. Employees such as Altholz that have the terms and conditions of their employment changed, as well as being terminated from employment, because of their gender and/or pregnancy, are defined by 42 USC 2000e, et. seq., and by case precedent, as a protected class.

62. The aforesaid conduct, actions and behavior of the Defendant, its agents, servants or employees, were based upon Altholz' membership in any/all of the aforesaid protected classes, in violation of 42 USC 2000e, et. seq.

63. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

64. In addition to suffering significant loss of income, bonuses, perks and benefits, Altholz was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Altholz' human rights.

65. As a proximate result of defendants' conduct, Altholz has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

66. That the aforesaid actions, conduct and behavior of the Defendant, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, gross, wanton, irresponsible and/or intentional, and shocks the conscience of this Honorable Court.

67. Altholz, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the Defendant, of a separate award of punitive damages and attorney's fees, along with costs, interest and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF RAZIE ALTHOLZ AGAINST DEFENDANT FOR UNLAWFUL DISCRIMINATION, IN VIOLATION OF THE FMLA

68. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"67" of this Complaint as though fully and completely set forth at length herein.

69. It is a violation of the FMLA for employers such as USCJ to terminate an employee, without otherwise offering a comparable position to the employee who has exercised their right to take FMLA leave.

70. That Altholz was and is a protected employee under the FMLA.

71. The aforesaid conduct, actions and behavior of USCJ, its agents, servants or employees, in terminating Altholz during her approved Altholz Maternity Leave, and refusing to offer a comparable position to Altholz and/or discriminating, retaliating and treating Altholz adversely regarding the terms and conditions of her employment for seeking to file a claim for FMLA leave, is in violation of the FMLA.

72. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for unlawful violation of the FMLA.

73. In addition to suffering significant loss of income, bonuses, perks and benefits, Altholz was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Altholz human rights.

74. As a proximate result of defendants' conduct, Altholz has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

75. That the aforesaid actions, conduct and behavior of the Defendant, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, gross, wanton, irresponsible and/or intentional, and shocks the conscience of this Honorable Court.

NYSCEF DOC. NO. 1
INDEX NO. 516963/2021
RECEIVED NYSCEF: 07/09/2021

Case 1:21-cv-04360-FB-RLM   Document 1-1   Filed 08/03/21   Page 13 of 13 PageID #: 15

76. Altholz, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the Defendant, of a separate award of punitive damages and attorney's fees, along with costs, interest and disbursements.

WHEREFORE, plaintiff RAZIE ALTHOLZ demand monetary judgment against defendant THE UNITED SYNAGOGUE OF CONSERVATIVE JUDAISM, in accordance with the aforesaid causes of action, along with the costs, fees and disbursements of this action.

Dated: New York, New York
July 9, 2021

Yours, etc.,

_____
CARLA P. BAUTISTA
ALAN J. BENNETT, PLLC
Attorneys for Plaintiff
RAZIE ALTHOLZ
369 Lexington Avenue
Suite 213
New York, New York 10017
(212) 696-2116